UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

MARK HOLMES,

    Plaintiff,

vs.                                             CASE NO.: 2:09-CV-381-CEH-SPC

COLLIER COUNTY BOARD OF
COMMISSIONERS, as the body
Corporate governing Collier County,
Florida, USA.

    Defendant.
_____/

## DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY FOR REMITTITUR OR NEW TRIAL AND SUPPORTING MEMORANDUM OF LAW

Defendant, COLLIER COUNTY BOARD OF COMMISSIONERS ("the County"), pursuant to Rules 50(b) and 59(a) and (e) of the Federal Rules of Civil Procedure, hereby submits its Renewed Motion for Judgment as a Matter of Law or Alternatively for Remittitur or New Trial and Supporting Memorandum of Law, and states the following:

    1.    On June 8, 2011 following the completion of the Plaintiff's case in chief, the County motioned for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure as to Plaintiff's claims under the Florida Public Whistleblower's Act (FWA) and the Family Medical Leave Act (FMLA). The Court denied the County's Motion and both Plaintiff's claims were submitted to the jury on June 10, 2011.

2. The jury found for the Defendant as to the Plaintiff's FMLA claim, but returned a verdict in the amount of $70,000 for Plaintiff's claim under the Florida Public Whistleblower's Act (FWA), § 112.3187, Florida Statutes.

3. Pursuant to Rule 50(b) Defendant renews its motion for judgment as a matter of law as a reasonable jury could not have had a sufficient legal basis to find that the Plaintiff proved the elements of his claim of retaliation under the FWA as he did not engage in protected activity, experience an adverse employment action or prove that a causal connection existed between such protected activity and an adverse employment action. Nor could a reasonable jury have had a sufficient legal basis to find that the legitimate, nondiscriminatory reasons articulated by Defendant for its actions were pretext for retaliation.

4. In the alternative, Defendant motions under Rule 59(e) for remittitur as pursuant to the damages provision of the FWA, Plaintiff is entitled to recover only lost wages from the Defendant for adverse actions occurring within the FWA's 180-day statute of limitations.

WHEREFORE, Defendant COLLIER COUNTY BOARD OF COMMISSIONERS respectfully moves this Court to grant its Motion for Judgment as a Matter of Law and hold that Plaintiff's claim under the FWA must fail as a matter of law or in the alternative, to remit a portion of the jury award or grant a new trial.

## Memorandum of Law

**I.    Standard for Renewed Motion for Judgment as a Matter of Law**

Rule 50(b) of the Federal Rules of Civil Procedure states in pertinent part:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.

Fed.R.Civ.P. 50(b). If this Court finds that the jury did not have a legally sufficient evidentiary basis to find that Plaintiff suffered retaliation for engaging in protected activity in violation of the FWA, the County's Motion for Judgment as a Matter of Law should be granted. Collado v. United Parcel Service, Co., 419 F.3d 1143, 1160 (11th Cir. 2005) (directed verdict proper under Rule 50(b) where there was a dearth of evidence indicating retaliatory motivation). When ruling on a 50(b) motion, a court views all of the evidence adduced at trial and draws all reasonable inferences in the light most favorable to the non-moving party. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir.2004). "The trial judge may not re-weigh the evidence, make credibility determinations or substitute its judgment for that of the jury." Hudson v. Chertoff, 473 F.Supp.2d 1279, 1283 (S.D.Fla.2007) (citing Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir.1999)).

## II. As Holmes did not Engage in Protected Activity, his Claim under the FWA Fails as a Matter of Law.

FWA claim are analyzed using the same framework as Title VII retaliation claims. Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1132 (Fla. 4th DCA 2003); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000). To prove a claim under the FWA, a plaintiff must prove that: (1) he engaged in a statutorily protected expression or activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the events. Rice-Lamar, 853 So.2d at 1132-33. The FWA provides that public agencies are prohibited from taking retaliatory action against an employee who reports:

> any violation or suspected violation of any federal, state or local law, rule or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare. § 112.3187(5)(a), Fla. Stat.

3

The FWA also prohibits public agencies from taking retaliatory action against an employee who reports:

> any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor. § 112.3187(5)(b), Fla. Stat.

While the FWA does not define "law, rule or regulation", cases that have considered the scope of this requirement under Florida's Private Whistleblower's Act have held that an FCC policy against falsification of the news does not qualify as a "law, rule or regulation". New World Communications, 866 So.2d 1231, 1233 (Fla. 2nd DCA 2004). Nor does an injunction. Tyson v. Viacom, Inc., 760 So.2d 276, 277 (Fla. 4th DCA 2000). Nor does a Governor's Executive Order. Gillyard v. Delta Health Group, Inc., 757 So.2d 601, 603(Fla. 5th DCA 2000). Moreover, this violation or suspected violation must create and present "a substantial and specific danger to the public's health, safety, or welfare". § 112.3187(5)(a), Fla. Stat.

This Court's Order on May 20, 2011, denying the County's Motion for Summary Judgment, held that Holmes could demonstrate that his December 2007 letter constituted a protected expression in two ways: (1) by showing that in this letter he brought forth allegations of racial and religious biases or (2) misfeasance regarding the County's helicopter operations. (Doc. 125, p. 9). However, the evidence at trial clearly showed that Holmes' December 2007 letter did not bring forth suspected violations of any law, rule or regulation or allegations of misfeasance[1].

From his testimony at trial, it is clear that Holmes himself did not even *subjectively* believe that he was "blowing the whistle". Holmes' testimony centered on issues that he had

---

[1] The County notes that it is not waiving its argument that Holmes' letter was not sent to an "appropriate official" as required to state a claim under the FWA.

with the department's management under Terry Henderson, which he described as "rotting from the inside" and a "rudderless ship". Holmes' contention that he brought forth allegations of misfeasance was entirely unsupported by competent evidence and amounted merely to Holmes' personal opinion that Henderson was an ineffective and incompetent manager. Moreover, Holmes acknowledged in his testimony that his issues related to Henderson's management were not unique as he had a history of disagreeing with prior Chief Pilots, admitting to expressing dissatisfaction regarding the leadership of previous Chief Pilot Mark Kennedy. As a matter of law, Holmes' disagreement with the management style of Henderson cannot constitute protected activity.

Likewise Holmes' assertion that his December 2007 letter brought forth allegations of racial or religious bias was not supported by a scintilla of evidence at trial on which a reasonable jury could base a finding that Holmes brought forth allegations of racial or religious bias. It is clear from the letter itself and Holmes' testimony that Director of Maintenance, Ram Bhagwandass expressed a personal opinion as to why he left Trinidad in response to a question. Under even the most liberal construction of the FWA, simply uttering the word "Muslim" in response to a question or off-handedly commenting that the British still think the former Colonies are under its rule, would not form an objectively reasonable basis for concluding that Bhagwandass had a racial or religious bias. There was no evidence presented that Bhagwandass' comments were made in the context of an employment decision, but were merely stray remarks. Ash v. Tyson Foods, Inc. 190 Fed.Appx. 924, (11th Cir. 2006); *see also* Ritchie v. Industrial Steel, Inc. 2011 WL 1899570, *5, (11th Cir. 2011). Even assuming *arguendo* that Bhagwandass had a racial bias, this is not sufficient evidence to support a finding that the County violated a "law, rule or regulation". At a minimum, for a reasonable jury to make such a finding would require evidence

regarding the knowledge of County management as to Bhagwandass' alleged racial bias and no such evidence was presented at trial.

Regarding the vague reference in his December 2007 letter to criminal allegations, Holmes' trial testimony clarified that he was not accusing *the County* of criminal activity, rather he overheard Henderson accusing a pilot of not properly filling out a log. While Holmes speculated that this constituted an allegation by Henderson that this pilot was engaged in criminal activity, he brought forth no evidence supporting his conclusion. Furthermore, there was no evidence presented by which a jury could reasonably conclude that Henderson accusing a pilot of engaging in potentially criminal activity could possibly constitute suspected or actual criminal activity on behalf of the County. Simply stated, Holmes was not raising allegations of criminal activity, but complaining that Henderson was accusing a pilot of activity which could be considered illegal.

Holmes further alleged that his December 2007 letter brought forth safety issues in that Henderson directed him not to speak to Bhagwandass and this posed a safety concern, however Holmes admitted that he still had avenues for communicating with Bhagwandass, that Henderson clarified and fixed the issue, at the most this occurred for a period of two weeks and no safety issue actually occurred as a result[2].

As Holmes did not present sufficient evidence to demonstrate that his December 2007 letter constituted protected activity, the County respectfully submits that no reasonable jury could find for him as to this element of his claim under the FWA.

### III. The Only Timely Adverse Employment Action Alleged by Holmes was the Delay in Returning him to Flight Status Beyond February 28, 2009

---

[2] Plaintiff's counsel questioned the County's witnesses, including Henderson and Page, whether the fact that Holmes could not communicate with Bhagwandass "could" be a safety issue, however it is clear that no safety issue occurred under the facts as presented at trial and under the circumstances Plaintiff's belief, even if subjectively held, was not objectively reasonable.

Pursuant to 112.3187(8)(b) a "public employee may, within 180 days after the action prohibited by this section, bring a civil action in a court of competent jurisdiction". Kelly v. Lee County Mosquito Control Dist., 2006 WL 3708100, at *2 (M.D.Fla. Dec. 14, 2006) (referring to the 180-day time period set forth in section 112.3187 as a "statute of limitations"); White v. School Board of Hillsborough County, 636 F.Supp.2d 1272, 1282-83 (M.D.Fla.2007) ("actions shall be filed within 180 days of a decision by a local government authority of within 180 days from the prohibited act.") (citing to § 112.3187(8)); Shuck v. Clark, No. 8:05-CV-2042-T-30TBM, 2007 WL 676198, at *4 n. 3 (M.D.Fla. Mar. 1, 2007) (noting that a civil action under section 112.3187(8) must be filed within 180 days of the adverse employment action or within 180 days of entry of the final decision of the local governmental authority). [3]

Plaintiff filed his Initial Complaint on May 19, 2009. (Doc. 2). Therefore, although it is apparent that there was considerable jury confusion regarding this issue, only adverse employment actions that occurred within 180 days of May 19, 2009, or on or after November 20, 2008 are timely for purposes of Holmes' claim under the FWA[4][5]. Accordingly, the only actionable adverse employment action in this matter is the alleged delay in restoring Holmes to

---

[3] While one Middle District Case, Harris v. District Bd. of Trustees of Polk Community College, 9 F.Supp.2d 1319, 1328 (M.D.Fla.,1998) has held that the 180 days starts on the date that the plaintiff "has knowledge of the allegedly wrongful act", other courts have disagreed and in any event there is no evidence that this would change the operative deadline in this case. Harris v. District Bd. of Trustees of Polk Community College, 9 F.Supp.2d 1319, 1328 (M.D.Fla.,1998).
[4] Plaintiff's Amended Damages Claims seemingly acknowledges this as Plaintiff seeks damages from November 14, 2008 through April 3, 2009.
[5] Plaintiff's trial presentation was overwhelmingly focused on the Plaintiff's termination and the flyover incident, as if these were the adverse employment actions at issue in this case rather than the delay beyond February 28, 2009. So much of the trial was spent "litigating" the flyover and as a result the jury's attention and questions were focused on these issues rather than the delay.

flight status beyond what he has alleged was the six-month deadline imposed in Leo Ochs' letter dated August 28, 2008, or February 28, 2009.[6]

## IV. As Plaintiff did not experience an adverse employment action, his claim under the FWA fails as a matter of law.

It is clear from this Court's Order denying Defendant's Motion for Summary Judgment that the *only* adverse employment action at issue in this case was the delay in returning Holmes to active flight status beyond what Holmes alleged was a six-month deadline imposed by then- Deputy County Manager Leo Ochs in his letter dated August 28, 2008. (Doc. 125, p. 12). It is equally clear that at trial, Plaintiff did not proffer evidence which could form a legally sufficient basis on which the jury could have concluded that he experienced an adverse employment action in this regard.

In order for the jury to reasonably conclude that Holmes' reinstatement to flight status was delayed, first required a determination that Leo Ochs' August 28, 2008 letter contained a deadline regarding Holmes reinstatement to flight status. The only evidence presented was the letter itself, which on its face does not set forth a deadline. Moreover, the individual who drafted the letter, Leo Ochs, testified that his letter did not contain a deadline and that the six-month reference was intended only as a guideline. Plaintiff's self-serving and speculative interpretation of Leo Ochs' letter is not competent evidence on which the jury is permitted to base a determination that Holmes' reinstatement to flight status was delayed. Yoder Bros., Inc. v. California-Florida Plant Corp., 537 F.2d 1347, 1371 (5th Cir. 1976); Ralston Purina Co. v. Hobson, 554 F.2d 725, 729 (5th Cir. 1977) ("where there is no relevant support for self-interested testimony a jury must not be

---

[6] Holmes' termination is not a timely adverse employment action for purposes of this claim under the FWA as he was recommended for termination on May 23, 2008 or 361 days prior to filing his Complaint. Likewise as Holmes' removal from flight status occurred on September 4, 2008 or 257 days prior to filing his Complaint it is likewise untimely for purposes of Holmes' FWA claim.

allowed to speculate"…"a directed verdict, or judgment notwithstanding the verdict, is the proper safeguard against such speculation by the jury").

Even assuming *arguendo* that there was sufficient evidence upon which the jury could determine that the letter contained a six-month deadline, the jury must then further have sufficient evidence on which to conclude that this delay, beginning on February 28, 2009, in and of itself was a materially adverse employment action. This requires Holmes to "show that a reasonable employee would have found the challenged action *materially* adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006) (quoting Rochon v. Gonzalez, 438 F.3d 1211, 1213 (C.A.D.C. 2006) (internal quotations omitted) (emphasis added)). There was not a scintilla of evidence in the record which would enable the jury to reach this conclusion- Plaintiff's trial presentation related only to Plaintiff's reduction in his hourly rate and included no evidence regarding the alleged adverse impact of the delay beginning on February 28, 2009. The evidence is undisputed that the reduction to Plaintiff's hourly rate occurred in September 2008, *five months prior* to the adverse employment action beginning in February 2009. Moreover, for purposes of this action, the change in Plaintiff's hourly rate that occurred in September 2008 is untimely and cannot be considered[7]. Clearly the alleged delay cannot be an adverse employment action because Holmes has no damages flowing from the delay itself. In contrast to a retaliation claim under Title VII where a jury could award compensatory damages or damages for emotional distress, under the FWA a plaintiff can only recover lost wages or benefits.

---

[7] Plaintiff also alleged that certain changes in job duties were adverse employment actions, such as cleaning toilets and bathrooms. However, the evidence is unrebutted that this occurred only during the time he was assigned to Supply, which was *after* he was reinstated to the pilot hourly rate in March 2009 and the evidence presented at trial demonstrated that Holmes was reassigned to Supply at his request and that of his attorney. Therefore, there are no damages that could flow from having to clean a bathroom.

Because the alleged delay which occurred beginning on February 28, 2009, cannot possibly be considered "materially adverse", no reasonable jury could find for Plaintiff as to this element of his claim under the FWA[8].

**V.    Because Plaintiff cannot demonstrate a causal connection between protected activity and an adverse employment action, his claim under the FWA must fail as a matter of law.**

Clearly this is not a case where close temporal proximity can give rise to a presumption of causation as there is a gap of over *fourteen (14) months* between the allegedly protected activity and the adverse employment action. This is an extraordinary length of time across which Holmes seeks to show causation. While Holmes alleged that he was not attempting to show causation through temporal proximity alone, the temporal proximity in this case is so attenuated that not only does it not *assist* Holmes in establishing temporal proximity, it actually *hurts* him. Atkins v. Astrue, 2007 WL 4373598, *11 (N.D.Ga., 2007) ("conversely, the longer the period between the protected activity and the adverse employment action, the weaker the inference that the adverse action was motivated by retaliation".)

While the Court should not even consider the issue of Holmes' termination as it is not the alleged adverse employment action, the undisputed evidence clearly shows that between Holmes' letter in December 2007 and the May 2008 flyover incident, Holmes experienced absolutely no allegedly retaliatory adverse actions *for a period of five months*.[9] By virtue of this fact alone, any inference of causation is broken. Jiles v. United Parcel Service, Inc., 360 Fed.Appx.61, 66 (11th Cir. 2010) *citing* Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998). ("a plaintiff may establish the causal relation element under a prima facie case of retaliation based

---

[8] The evidence at trial was likewise clear that Plaintiff's hourly rate was restored to that of a pilot on March 26, 2009.
[9] Additionally, the flyover incident and Plaintiff's termination are well outside of the FWA's six month statute of limitations.

on evidence that an employer knew of a protected activity, and a series of adverse employment actions commenced almost immediately thereafter"). Holmes cannot show that retaliation began almost immediately as the undisputed evidence is that nothing happened to him for over five months. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir.2006).

In this Court's May 20, 2011 Order denying the County's Motion for Summary Judgment, the Court noted that the Plaintiff could demonstrate a causal connection between his December 2007 letter and the adverse employment action that began in February 2009 using circumstantial evidence, including the following: (1) the flyover incident, which was initiated by Henderson (2) the failure to timely create the Return to Flight Action Plan and comply with Och's reinstatement letter; and (3) Page's lack of familiarity with FAA regulations despite believing that Plaintiff was flying too low during the flyover incident. There was no evidence presented at trial regarding the three factors articulated by the Court or any other evidentiary basis on which a reasonable jury could conclude that the Plaintiff carried his burden of proving a causal connection between his December 2007 letter and the delay in his reinstatement to flight status beyond February 28, 2009.

Regarding the first factor noted by the Court, the unrebutted evidence at trial showed that the investigation into the flyover incident was *not* initiated by Henderson, but by Page who personally observed the low flight on May 10, 2008 and immediately requested that the flight be looked into *prior* to having any knowledge as to the identity of the pilot of the flight. Therefore, as Page was unaware that Holmes was flying the helicopter when he ordered the investigation, it follows that he could not have been motivated by Holmes' alleged protected activity at that time. Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1207-08 (11th Cir.2001). ("the court must also examine, however, whether the decision maker had notice of the protected activity").

Moreover, there is no basis on which a reasonable jury could conclude that the County "delayed" the creation of the return to flight action plan or failed to follow the mandates of Leo Ochs' letter as the letter does not contain a deadline and the unrebutted testimony of Ochs was that his letter did not set forth a "deadline", he was well aware of the progress on the return to flight action plan and had no objection. The only evidence in support of this contention was the testimony of Holmes, whose self-serving, speculative testimony regarding what Ochs intended in the letter is not competent evidence on which a reasonable evidentiary finding can be based.

Holmes' trial presentation included no evidence regarding Page's familiarity with FAA regulations or that familiarity is required for the President of a FAA Chapter 135 organization. In fact, the undisputed testimony of Chief Pilot Steve Adams demonstrated that the individual who holds the title of President for purposes of the FAA is often someone who is unfamiliar with FAA regulations, such as an owner. Moreover, the evidence showed that Dan Summers, who served as BES Director, long before any alleged protected conduct, was also unfamiliar with FAA regulations.

In addition to failing to demonstrate a causal connection through those means identified by the Court in its Order, Plaintiff also failed to present other evidence under which the jury could make a legally sufficient determination that there was a causal connection between Plaintiff's December 2007 letter and the delay in returning him to flight status beginning in February 2009. In fact, Holmes himself testified that during a conversation with Page prior to writing the letter, Page recognized some issues existed with Henderson's management style and encouraged Holmes to put his concerns regarding Henderson in writing. There was not a scintilla of evidence that anyone was upset or angry at Holmes for writing this letter. There is no evidence that anyone was disciplined or admonished as a result of the letter- not Henderson, not Bhagwandass. The evidence presented

12

demonstrated that the concerns raised therein were welcomed, looked into and resolved. Plaintiff himself admitted it was merely a few weeks before the issues were resolved. Significantly, there was absolutely no evidence whatsoever that anyone at the County ever thought about this letter again, much less that it provided the motivation to take any adverse employment action fourteen months later. Consequently, the County submits that no reasonable jury could find for Plaintiff as to this element of his claim under the FWA.

VI. **The Evidence Clearly Showed that the County had Legitimate, Nondiscriminatory Reasons for its Actions which Holmes Cannot Prove were Pretext**

Even assuming *arguendo* that Holmes put on sufficient evidence under which the jury could have reasonably concluded that he carried his burden as to the elements of his FWA claim, the undisputed evidence showed that the "delay" in Holmes' return to flight was due to legitimate reasons, wholly unrelated to the December 1, 2007 letter. The FWA states in relevant part:

> It shall be an affirmative defense to any action brought pursuant to this section that the adverse action was predicated upon grounds other than, and would have been taken absent, the employee's or person's exercise of rights protected by this section. F.S. 112.3187(10).

At trial, the County demonstrated legitimate, nondiscriminatory reasons for any delay that occurred regarding Holmes' return to flight. First, the "delay" in returning Holmes to flight status did not occur in a vacuum, but was the direct result of the intervening incident of Holmes' conduct during the flyover in May 2008 and the resulting investigation. Even though Holmes' employment was reinstated, he was found to have been inconsistent and untruthful during the investigation and consequently the County had concerns regarding his skills and requisite fitness as a pilot. Moreover, the unrebutted evidence showed that the development of the Return to Flight Action Plan was impacted by a variety of factors including: Summers seeking input from

13

Medflight's safety consultant, marshalling the input of a number of the County's management level employees, researching commercially available computer training, intervening holidays and the press of other business including the construction of a new EMS building. It was also undisputed that once the plan was created, Holmes himself contributed to the delay of its implementation as he cancelled appointments and as of June 2009 he had failed to complete computer-based flight training.

To overcome the County's legitimate nondiscriminatory reasons, the jury must have a legally sufficient basis for concluding that Holmes demonstrated that the County's legitimate reasons were pretextual for prohibited retaliatory conduct. Cooper v. Miami-Dade County, 2004 WL 2044288 *7 (S.D. Fla. 2004). In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not actually what motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997). This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " *Id.* (*quoting* Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996)).

There was not a shred of evidence by which a reasonable jury could conclude that Holmes was treated differently than any other employee would have been who was terminated, reinstated and had to go complete a flight safety training program- much less that such treatment was related to his December 2007 letter. The undisputed testimony of Dan Summers, who was

charged by Leo Ochs with the development of the return to flight plan, was that he had serious concerns regarding Holmes ability to safely fly. These concerns were shared by EMS Medical Director, Dr. Robert Tober. Plaintiff did not present any evidence that Holmes' December 2007 letter was considered at any stage in this process or that the time it took to create and implement the return to flight action plan was impacted at all by the December 2007 letter. In fact there is no evidence that anyone ever considered this letter after December 2007 or even remembered it.

While Holmes may have felt it took too long to return him to flight, this "feeling" is a legally insufficient basis for a jury to conclude that the County's legitimate, nondiscriminatory business reasons were pretext for retaliation. Gary v. Hale, 212 Fed.Appx. 952, 959-960 (11th Cir. 2007). The law is well-settled that an employer may act for good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1187 (11th Cir. 1984). As Holmes offered no evidence of such weight that could rebut the County's legitimate non-discriminatory reasons for its actions and carry his ultimate burden that the County retaliated against him, judgment as a matter of law in the County's favor is warranted.

### VII. Motion for Remittitur

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a district court has the discretion to grant a new trial unless a plaintiff remits a portion of the judgment. Advanced Bodycare Solutions, LLC v. Thione Intern., Inc. 615 F.3d 1352, 1363 (11th Cir., 2010). In accordance with the evidence introduced at trial, Holmes' damages are due to be remitted to as according to the FWA's 180-day statute of limitations, the only adverse action that Holmes can recover for is the delay occurring after February 28, 2009 until his reinstatement to flight pay on March 26, 2009, approximately one month later. While utilizing Plaintiff's Amended Damages

Claim (Doc. 132-1) Defendant cannot precisely calculate this amount, it is believed to be approximately $4247.28.  In the alternative and as the Court already ruled after taking this issue under advisement during the conference regarding jury instructions, Holmes is entitled to recover only lost wages from the County, in the amount of $17,162.96.  The issue of losses from Holmes' second job remained before the jury only as it related to his FMLA claim.  In light of this evidence, the jury's award of $70,000 is grossly excessive.  As a consequence, the jury's award of $70,000 must be remitted to conform to the evidence and the law.

**VIII.  Motion for New Trial**

To grant a motion for a new trial, "a trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir.1984) (internal citations and quotations omitted). "[T]o assure that the judge does not simply substitute his judgment for that of the jury, ... new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." *Id.* (quoting Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir.1980)).

For the reasons set forth above, Defendant submits that the judgment in this case is contrary to the law and evidence.  Moreover, it is clear that there was a great deal of confusion among the jury regarding what the adverse employment action was in this case as their attention was focused on the flyover incident and termination, rather than the delay in reinstating Holmes to flight status after February 28, 2009.  MacPherson v. University of Montevallo, 922 F.2d 766, 776 (11th Cir. 1991) (district court was within its discretion in ordering new trial where there was jury

16

confusion); U.S. v. Horton, 622 F.2d 144, 148 (5th Cir. 1980). For these reasons, Defendant respectfully requests that this Court grant a new trial.

                 Respectfully submitted,

                 */s/ Mark Levitt*
                 Mark E. Levitt, Esq.
                 Florida Bar No.:193190
                 E-Mail: mlevitt@anblaw.com
                 Shannon L. Kelly, Esq.
                 Florida Bar No.: 031093
                 E-Mail: skelly@anblaw.com
                 ALLEN, NORTON & BLUE, P.A.
                 Attorneys for Defendant
                 ALLEN, NORTON & BLUE, P.A.
                 1477 W. Fairbanks Ave., Suite 100
                 Winter Park, FL 32789
                 Telephone: (407) 571-2152
                 Facsimile: (407) 571-1496
                 Counsel for Defendants

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this __13th__ day of July, 2011, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: Samuel C. Gold, Esq., 3948 Upolo Lane, Naples, FL 34119.

                 /s/ *Mark E. Levitt*
                 Attorney